## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **STEADFAST INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:09-cv-3148** |
| | § | |
| **POP RESTAURANTS, LLC ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant Pop Restaurants, LLC's Motion to Dismiss for Improper Venue (Doc. No. 7), and Motion to Dismiss for Improper Venue of Defendants Wok Restaurants, LLC, Four Leaf Ventures, LLC, Sarape, LP, and AGP Management, LLC (Doc. No. 13). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that both motions should be granted.

### I.  BACKGROUND

Plaintiff Steadfast Insurance Company ("Steadfast") insured Defendants under two commercial general liability policies ("policies"). The first policy's effective date runs from June 7, 2005-June 7, 2006) ("2005-2006 policy"). The second policy's effective date runs from June 7, 2006-June 7, 2007 ("2006-2007 policy"). Defendants Pop Restaurants, LLC, ("Pop"), Wok Restaurants, LLC ("Wok"), Four Leaf Ventures, LLC ("Four Leaf"), and Sarape, LP ("Sarape") are Named Insureds on the policies. (Pl.'s Resp. to Def. Pop Rests., LLC's Mot. to Dismiss for Improper Venue, Doc. No. 9, Ex. A-1 at 32; *Id.* Ex. A-2 at 4.) Defendant AGP Management ("AGP") is a general partner of a

1

Named Insured. (Pl.'s Original Compl., Doc. No. 1, ¶ 9.) More than 25 claims have been made under the policies against one or more of the Named Insureds. Steadfast alleges that it has defended the Named Insureds for these claims and resolved claims against the Named Insureds "in accordance with the rights of Steadfast under the policy." (*Id.* ¶ 10.) Steadfast alleges further that it has submitted numerous invoices to the Defendants for the deductible amounts which, at the time of the filing of this action, had totaled approximately $290,632.23, excluding interest.[1] Finally, Steadfast alleges that Defendants have refused to pay the outstanding deductible amounts owed. (*Id.* ¶¶ 11-12.) It appears undisputed, however, that none of the claims was made against any of Defendants' properties specifically. Instead, Steadfast avers that Defendants' are jointly and severally liable for claims made against any Named Insured in the policy.

Steadfast brought suit against Defendants in this Court, alleging one count of breach of contract. (*Id.* ¶¶ 13-17.) Steadfast maintains that the policies require Defendants to reimburse Steadfast promptly for amounts paid, and Defendants have failed to comply with those contractual obligations. (*Id.* ¶ 14.) In response, Pop filed a motion to dismiss for improper venue, arguing that it does not reside in the Southern District of Texas, and that a substantial part of Plaintiff's claim did not arise in the district. Wok, Four Leaf, Sarape, and AGP Management followed suit shortly thereafter, advancing the same arguments. Because the two motions to dismiss present virtually identical arguments and counterarguments, the Court considers them together.

## II.    MOTION TO DISMISS

### A.  Legal Standard

---

[1] Steadfast alleges that, as of August 4, 2010, the deductibles now owed on the policies exceed $400,000.00. (Supplement to the Resp. & Resp. to Defs.' Supplement to the Mot. to Dismiss for Improper Venue as to All Defs., Doc. No. 39, at 5.)

A party may move for dismissal of a suit based on improper venue under Federal Rule of Civil Procedure 12(b)(3). *Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) (citations omitted); *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002) (citations omitted); *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). "The majority of the courts conform to the standard that once a defendant has raised the improper venue issue by motion, the burden of sustaining venue rests with the plaintiff." *Laserdynamics*, 209 F.R.D. at 390; *see also McCaskey*, 133 F. Supp. 2d at 523; *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1047-48 (S.D. Tex. 2000); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3826 (3d ed. 1998 & 2006 Supp.) ("'[T]he better view,' and the position that probably represents the weight of judicial authority, is that, when an objection has been raised, the burden is on the plaintiff to establish that the district he or she has chosen is a proper venue.") (internal citations omitted). However, if there is no evidentiary hearing, a court should allow a plaintiff to sustain this burden by setting forth facts which, taken as true, would establish venue. *Bigham*, 123 F. Supp. 2d at 1048. Courts should, therefore, "accept uncontroverted facts in a plaintiff's pleadings as true, and [] resolve any conflicts in the plaintiff's favor." *Langton*, 282 F. Supp. 2d at 508 (citing *Laserdynamics*, 209 F.R.D. at 390). A defendant need not affirmatively disprove each basis for a plaintiff's venue choice, but courts will give plaintiff "every benefit of doubt" in ascertaining what facts control its legal decision. *McCaskey*, 133 F. Supp. 2d at 523.

**B. Analysis**

Jurisdiction in this case is founded solely upon diversity of citizenship. In such an action, 28 U.S.C. § 1391(a) provides that a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Steadfast maintains that venue is proper under Section 1391(a)(1), known as the "residential" venue provision, and Section 1391(a)(2), known as the "transactional" venue provision.

## 1. Section 1391(a)(1): residential venue

Section 1391(a)(1) allows for venue based on the residence of the defendants.[2] If any Defendant resides in the Southern District of Texas ("Southern District"), then venue is proper pursuant to Section 1391(a)(1).

Section 1391(c) defines the residence of a corporation for venue purposes when a state, like Texas, has more than one judicial district:

> In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). Thus, a Defendant in this case will reside in the Southern District if it is subject to personal jurisdiction here.

---

[2] It contains the important limitation that all defendants must reside in the same state. This point appears not to be in dispute. All Defendants aver, and Steadfast does not dispute, that they reside in the Dallas-Fort Worth area, which falls under the jurisdiction of the Northern District of Texas. Steadfast maintains, of course, that while Defendants may reside in the Northern District of Texas, they *also* reside in the Southern District of Texas for venue purposes.

A federal court sitting in diversity, as this Court is now, may assert personal jurisdiction if "'(1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied'" under the Fourteenth Amendment to the United States Constitution. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). Because the long-arm statute in Texas extends to the limits of federal due process, this two-step inquiry "collapses into one federal due process analysis." *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). A nonresident defendant is subject to personal jurisdiction under federal due process requirements if: (1) the defendant has "'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state,'" and (2) "'the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal quotations omitted) (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). Jurisdiction may be general or specific. "'Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contact with the forum.'" *Id.* (internal quotations omitted) (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). Steadfast argues that all Defendants' contacts with the Southern District satisfy both general and specific jurisdiction analyses.

> **a. Is any defendant subject to general jurisdiction in the Southern District?**

General jurisdiction lies where a nonresident defendant's contacts with the forum state are substantial, continuous, and systematic. The "'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). The Fifth Circuit has "consistently imposed the high standard set by the [United States] Supreme Court when ruling on general jurisdiction issues." *Id.* at 611 (citations omitted).

In this case, the Court is confident that no Defendant has sufficient, systematic, and continuous contacts with the Southern District to establish general jurisdiction. Steadfast sets forth just one basis for general jurisdiction over all Defendants: that Defendants "contracted with Steadfast for two consecutive insurance polic[i]es that included coverage for businesses in the Southern District of Texas under which they agreed to be liable for payment of premiums and deductibles." (*See* Doc. No. 9, ¶ 13; Pl.'s Resp. to Mot. to Dismiss for Improper Venue Filed by Defs.' Wok Restaurants, LLC, Four Leaf Ventures, LLC, Sarape LP, and AGP Management, LLC, Doc. No. 18, ¶ 23.) This circuit's case law makes clear that these two contacts are too "insignificant and sporadic to 'constitute a general presence'" in the Southern District. *Johnston*, 523 at 612 (quoting *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990)). Steadfast concedes that no Defendant has its own business presence in the Southern District; it argues instead that Defendants were a few of many Named Insureds, some of whom had businesses in the Southern District. The Court finds that such contacts are far too attenuated to confer general jurisdiction over Defendants who do not have employees,

direct business, have corporate offices, or sell products in the Southern District. Defendants barely have any presence in the Southern District, let alone a general one. Accordingly, the Court finds the insurance policies are insufficient to establish general jurisdiction over any Defendant.

Steadfast asserts one additional basis for general jurisdiction as to Pop. Steadfast alleges that "Pop has undertaken the financial backing of a bankrupt company, Golden Restaurants (one of the Named Insureds),[3] whose place of business is located in the Southern District." (Doc. No. 9, ¶ 14.) Steadfast avers that Pop has agreed to provide financing for Golden Restaurants pursuant to a Revolving Credit Agreement and Promissory Note. (*Id.*) The Court finds that this contact, when combined with Pop's other contact in signing the policies, still falls far short of the standard required for general jurisdiction. Additionally, this argument fails because the order authorizing debtors to obtain postpetition financing was signed by the Northern District of Texas Bankruptcy Court one day *after* the instant action was filed, and thus cannot be considered for jurisdiction purposes, *see, e.g.*, *Glazier Grp., Inc. v. Mandalay Corp.*, 2007 WL 2021762, at *8 (July 11, 2007) (collecting cases), and because the proposed promissory note attached to the order requires all notices and other communications to be made in Dallas, Texas, and does not mention any activities whatsoever in the Southern District of Texas. In any event, even if the financing was undertaken before this suit was filed, the Court finds that it would not create the kind of systematic and continuous contacts needed to assert general jurisdiction over Pop.[4]

---

[3] Golden Restaurants is not a Defendant in this case.
[4] In supplemental briefing submitted on August 9, 2010, Pop advises the Court that there are two Southern District Restaurants that it is affiliated with. One closed in 2008. The other is still open, and Pop employees work at the Houston restaurant. The restaurants, however, are owned by another entity known

7

### b. Is any Defendant subject to specific jurisdiction in the Southern District?

Specific jurisdiction may lie where the suit arises from a defendant's contact with a forum. The Fifth Circuit has established a three-step inquiry for specific jurisdiction: "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

As to the first element, whether a defendant has "minimum contacts," we must identify some act whereby a defendant "'purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws.'" *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (5th Cir. 2006)). The defendant's conduct "must show that it 'reasonably anticipates being haled into court'" in the Southern District. *Id.* (quoting *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In a standard breach of contract case, an individual's contract with an out-of-state party, without more, cannot establish sufficient minimum contacts in the other party's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, a court must look to the

---

as Apple Concessions LLC, who is not a Named Insured under either policy at issue here. Pop receives revenue from Apple Concessions from the open restaurant, and used to receive revenue from the closed restaurant. The Court finds that this business operation does not create the systematic contacts necessary to assert general jurisdiction over Pop. Furthermore, since the revenue and employees are not related to any issues raised in this suit, they may not be used to exercise specific jurisdiction in this case. Plaintiff's Motion for Reconsideration (Doc. No. 46) on this point, then, is overruled.

parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant has established minimum contacts. *Id.* at 479.

This case, of course, is not a standard breach of contract case for the purposes of jurisdiction. That is, Steadfast is not a Southern District resident who contracted with the Defendants and is now attempting to sue them in its home district. Rather, Steadfast asserts that specific jurisdiction lies here over Defendants because Steadfast's claim "includes a claim for non-payment of a deductible relating to a claim made in the Southern District." (*See* Doc. No. 9, ¶ 15; Doc. No. 18, ¶ 24.) That is, Steadfast avers that, under the policies, the Named Insureds, which includes all Defendants besides AGP, agreed to be held jointly and severally liable for payments of deductibles owed on claims brought in the Southern District. Steadfast also claims that the Named Insureds are jointly and severally liable for breach of contract for policies covering restaurants located in the Southern District. There are at least six restaurants located in the Southern District that are covered by the policies, but it appears undisputed that Defendants operate none of these restaurants. Instead, a sum of $13,376.45 is owed for a claim brought against Golden Restaurants, one of the Named Insureds but *not* a defendant here, for one of their restaurants located in the Southern District of Texas. Based on this claim, Steadfast has sued Defendants in the Southern District for a much larger sum that now totals at least $400,000. Defendants vigorously dispute that the policies call for joint and several liability among all Named Insureds.

Steadfast's argument for specific jurisdiction over Defendants fails for two reasons. First, the policies do not provide for joint and several liability of claims among

all Named Insureds. Second, even assuming that the policies did impose joint and several liability on all Named Insureds, the Court concludes that jurisdiction over the Defendants may not be imposed merely because of their liability on the outstanding claims.

### i. No joint and several liability

The Court concludes, from its examination of the policies, that no joint and several liability was imposed on Defendants as a result of a co-insured's failure to pay a claim on one of its own restaurants.

Texas law governs our analysis of the policy provisions. According to Texas law, "the meaning of an insurance contract is to be determined under standards applicable to contracts generally." *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002). A court must "give effect to the intention of the parties as expressed by the policy language," and "'[w]hen the terms of an insurance policy are unambiguous, a court may not vary those terms.'" *Id.* (quoting *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995)). If a contract is worded so that it can be given a definite or certain legal meaning by the court, it is unambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citations omitted). However, if the contract is susceptible to two or more reasonable interpretations, it is ambiguous. Whether a contract is ambiguous is a question of law that must be decided by the courts. *Id.* Courts consider the contract "as a whole in light of the circumstances present when the contract was entered." *Id.*

Defendants argue that they are not jointly and severally liable for claims paid on behalf of restaurants located in Texas. It is apparently undisputed that there are *no*

provisions in the policies that state that the parties are jointly and severally liable for the payment of deductibles. Instead, the deductible endorsements state:

> Our obligation under the "bodily injury," "property damage," "personal injury" and "advertising injury" coverages to pay damages on your behalf applies only to the amount of damages and "defense costs" in excess of any deductible amount stated in the Schedule above . . . .

(Doc. No. 9, Ex. C, at 1.) Defendants argue that the deductible amount would apply only if damages were paid on behalf of an insured in connection with a claim, which is consistent with the policies' provision that Steadfast will "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' and 'property damage' to which this insurance applies." (*Id.* Ex. A-1, at 38; *id.* Ex. A-2, at 39.) Defendants argue that, without an obligation on the part of the insured to pay damages, there is no obligation on the part of Steadfast to pay the claim. Defendants maintain that, because no claims were paid on their behalf, they have no obligation to pay any deductible amount. (Doc. No. 7, ¶ 2; Doc. No. 13, ¶ 9.) Last, Defendants point to a "Separation of Insureds" provision, which states:

> **Separation of Insureds.**
> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:
> a.  As if each Named Insured were the only Named Insured; and
> b.  Separately to each insured against whom claim is made or "suit" is brought.

(Doc. No. 9, Ex. A-1, at 49; *id.* Ex. A-2, at 50.) When the policy is read as a whole, Defendants allege, it is clear that the duty on the part of an insured to pay a deductible falls upon that insured and not all other co-insureds.

Steadfast proffers a few arguments in favor of the policy requiring joint and several liability. First, the policies define "you" and "your" as the Named Insured shown

in the declarations, as well as any other person or organization qualifying as a Named Insured under the policies. (*Id.* Ex. A-1, at 38; *id.* Ex. A-2, at 39.) The policy does not distinguish which Named Insured owns which restaurant or which Named Insured is responsible for paying particular deductibles. Steadfast points out that the Location Listing endorsement lists all locations covered by the policies and does not specify that there is any difference between a location owned by Defendants versus a location owned by any other Named Insured. Steadfast argues that "you," as a defined term under the policy, should be given meaning in accordance with that definition.

Steadfast disputes Defendants' characterization of the Separation of Insureds provision. It argues that courts have applied the provision in the context of coverage, not in the context of payment of deductibles. It further argues that, "[s]ince the Named Insureds are not considered separately for purposes of the Limits of Insurance, and because the deductibles reduce the Limits of Insurance, then the Named Insureds are not considered separately for purposes of deductibles owed." (Pl.'s Surreply to Def. Pop Restaurants, LLC's Reply in Supp. of Mot. to Dismiss for Improper Venue, Doc. No. 12, ¶ 6.)

Steadfast attempts to stretch the policies much further than their language allows. The Court finds that, at the very best, the policies are ambiguous as to whether Defendants are jointly and severally liable for a claim paid on behalf of any Named Insured. The policies do not even include the phrase "jointly and severally liable" in their provisions. Furthermore, the Separation of Insureds provision provides that the policies shall apply separately as to each insured against whom a suit is brought. Even though Steadfast may be right that courts have applied this provision in the context of coverage

rather than deductible payments, the plain language of the provision, at the very least, creates ambiguity as to whether all Named Insureds are jointly and severally liable for each other's claims.

When a court finds that an insurance contract is ambiguous, it will adopt the construction most favorable to the insured. *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 842 (Tex. App.—El Paso 1999, no pet.). The Court therefore adopts a construction not imposing joint and several liability on Defendants for a claim made on behalf of non-Defendant Golden Restaurants.

Because Steadfast failed to show joint and several liability, such liability cannot provide the basis for this Court's exercise of personal jurisdiction over the Defendants. The Court makes this finding only for the purposes of determining the venue question, and not as a final determination on the merits of this case.

> ### ii. Even assuming joint and several liability, such liability does not satisfy minimum contacts analysis

Even assuming that Steadfast could prove that Defendants are jointly and severally liable for all claims paid on the policies, the Court still finds that personal jurisdiction does not lie against Defendants.

In *Sher v. Johnson*, the plaintiff had hired a Florida law partnership to represent him in connection with criminal proceedings in Florida. At the time of plaintiff's trial, his Florida lawyer was also being investigated for violations of the Hobbs Act. The lawyer failed to disclose this fact to plaintiff. Plaintiff was convicted on several criminal violations. The appellate court reversed plaintiff's conviction on grounds that, inter alia, plaintiff's right to competent counsel had been violated. 911 F.2d 1357, 1360 (9th Cir.

1990). Plaintiff sued for legal malpractice, naming the partnership and each individual partner as defendants. The Ninth Circuit affirmed the district court's finding that it did not have personal jurisdiction over the individual partners. Plaintiff argued to the court that, "because the liability of the partnership would establish the joint and several liability of each individual partner, jurisdiction over the partnership establish[ed] jurisdiction over the partners." *Id.* at 1365 (internal citations omitted). The court rejected that argument, finding that "[l]iability and jurisdiction are independent." *Id.* The court stated that liability "depends on the relationship between the plaintiff and defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 204 & n.19 (1977)). In reaching its conclusion, the court cited to the Supreme Court case of *Rush v. Savchuk* for the rule that, where two defendants may both be liable for a claim, a court nevertheless may not impute jurisdictional contacts from one to the other. *Id.* (citing *Rush v. Savchuk*, 444 U.S. 320 (1980)).

In *Central Progressive Bank v. Harvey*, a plaintiff bank brought suit to enforce commercial guaranties signed by defendants. Defendants had executed guarantees wherein they obligated themselves individually to be liable for sums due under a promissory note. The guaranties were governed by Louisiana law, and provided for payment to be made to the plaintiff in Louisiana. Defendants argued that the Louisiana court lacked personal jurisdiction over them. Plaintiff counterargued that personal jurisdiction was appropriate over defendants because they had executed commercial guaranties in which they obligated themselves to joint and several liability under Louisiana law to a Louisiana bank, and payments were to be made in Louisiana. 2009

WL 901770, at *3 (E.D. La. Mar. 27, 2009). Reviewing the relevant case law, the court found minimum contacts to be established when a nonresident defendant voluntarily executed a guaranty in favor of a Louisiana entity to induce the Louisiana entity to provide credit. *Id.* at *4 (citations omitted). The court found that defendants had purposely availed themselves of the privileges of conducting business in Louisiana by entering into an ongoing relationship with a Louisiana business entity. The court also found it significant that all loan documents were delivered to Louisiana and all payments were made there.

The Court concludes that the instant case is easily distinguishable from *Harvey*, and more akin to *Sher*. Unlike *Harvey*, Defendants here did not purposely avail themselves of any privileges in the Southern District by contracting for insurance with Steadfast. Steadfast is a citizen of Delaware and Illinois. It is not a Texas entity, although it does business in Texas. Steadfast has submitted no evidence of extensive contacts in the Southern District that leads the court to believe that it has offices here, prepared any policies here, or otherwise conducted business with Defendants using the Southern District as a home base. Furthermore, Steadfast does not aver that any policies were delivered to Defendants in the Southern District, or that any payments were made in the Southern District. This case is therefore not analogous to *Harvey*. Defendants have not purposely availed themselves of any benefits in the Southern District by conducting any business activity here.

Although *Sher* discusses personal jurisdiction in the context of partnerships, the Court nevertheless finds its reasoning instructive. If jurisdiction is only to depend on a defendant's personal relationship with the forum, rather than its potential liability for a

claim, then the Court must assess Defendants' minimum contacts with the Southern District *outside* of the joint and severable liability issue. Steadfast fails to provide any other minimum contacts with this district besides the joint and several liability provision. Other than Pop, not one allegation is made as to Defendants' travel, phone calls, business dealings, or any other contacts with this district.

Furthermore, the fact that the instant action does not raise issues of partnership makes Defendants' contacts with the Southern District even more attenuated. In *Sher*, the Ninth Circuit had to address partnership within the context of agency law, which imposes certain obligations upon agencies of principal companies or other entities. There is no contention here that the Defendants are agents, or exist in partnership, with any company whose restaurant is located in the Southern District.

Courts have rejected asserting personal jurisdiction over defendants who retain some sort of joint liability, such as a partnership or joint tortfeasor liability, where some independent minimum contacts apart from the joint liability are not shown. *See, e.g.*, *Clark v. Milam*, 830 F. Supp. 316, 325 (S.D.W. Va. 1993) ("Plaintiff argues as well even if [defendant's] contacts with West Virginia are insufficient to establish personal jurisdiction, [another defendant's] contacts are imputable to [him] by virtue of their relationship as partners. . . . Under the circumstances of this case, to exercise personal jurisdiction over [defendant] only on [the other defendant's] contacts with West Virginia would be inconsistent with the tenets of due process. Even viewed in the light most favorable to [p]laintiff, [defendant] had no contact with West Virginia sufficient to justify invitation to this [c]ourt as a [d]efendant."); *Simkins Corp. v. Gourmet Res. Int'l*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985) ("While the rule of joint tortfeasor liability may make

it economically advantageous to allow the maintenance of suit against both a corporation and its officers or directors in one court, the policy of judicial economy cannot be addressed in a vacuum. The principles of due process mandate that a court focus on the hardship of forcing a non-resident defendant to litigate in a distant forum. . . . Therefore, I hold that a plaintiff seeking to establish personal jurisdiction over an individual corporate officer or director on the basis of tortious conduct committed in the exercise of his corporate duties must prove, by a preponderance of the evidence, that the non-resident officer or director independently has sufficient forum-related contacts.") (internal citations omitted); *but see Durkin v. Shea*, 957 F. Supp. 1360, 1366-67 (S.D.N.Y. 1997) (finding that, because under New York law a partner is an agent of his fellow partners, the actions of New York partners could be attributed to Washington, D.C. and Florida partners for jurisdictional purposes); *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 123 (E.D. Pa. 1979) (answering affirmatively the question of whether the court "may infer from acts which are sufficient to create personal liability, if proved, to contacts which are sufficient to confer personal jurisdiction over the individual defendant").

This Court agrees that the sensible rule is that Steadfast must show minimum contacts independent of Defendants' alleged joint and several liability for the deductible payments. To assert personal jurisdiction over Defendants merely because, absent *any* other contact with this district, they are allegedly jointly liable on a policy that includes entities with contacts in the Southern District, offends federal due process requirements. Defendants could not reasonably anticipate being haled into court in the Southern District based on the contacts of another contractual entity. Because it is apparently undisputed

that Defendants have no other contacts with this district,[5] the Court holds that minimum contacts have not been established, and specific jurisdiction accordingly may not lie against Defendants.

Thus, the Court finds that the policies do not bind Defendants to joint and several liability of the claims, and that, even if it did, minimum contacts would still not be established in the Southern District. Because Defendants may not be subject to personal jurisdiction in the Southern District, then, they do not reside in the Southern District for the purposes of venue. Venue is improper pursuant to Section 1391(a)(1).

### 2. Section 1391(a)(2): transactional venue

Section 1391(a)(2) provides the so-called transactional basis for venue. *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 525 (S.D. Tex. 2001). This provision allows venue where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(a)(2).

Steadfast repeats its argument in favor of residential venue, arguing that "[a] substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District because Defendants are jointly and severally liable for payments of deductibles owed on claims brought in the Southern District." (Doc. No. 18, ¶ 15.) As its second argument, Steadfast posits that "Defendants are jointly and severally liable, along with the other Named Insureds, for breach of contract for [p]olicies covering restaurants located in the Southern District." *Id.* These two arguments essentially fold

---

[5] Pop is in a unique position as compared to the other Defendants, because it has more contacts with the Southern District. As noted *supra* n.4, however, the Court holds that Pop's alleged line of credit to Golden Restaurants, and affiliation with Apple Concessions LLC, does not create minimum contacts with the Southern District.

into one and, given its previous analysis, the Court finds that joint and several liability may not serve as the basis for Plaintiff's claims under Section 1391(a)(2).

The Court believes that Steadfast unnecessarily enters the joint liability issue into the 1391(a)(2) inquiry. Rather than asserting that Defendants are jointly and severally liable for payments of deductibles owed on claims brought in the Southern District, Steadfast may simply state that claims paid to restaurants in the Southern District constitute a substantial part of the events giving rise to its suit, and thus, venue is proper.

"In determining where substantial events giving rise to an action for breach of contract occurred, the Court should consider 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Principal Tech. Eng'g, Inc. v. SMI Cos.*, 2009 WL 4730609, at *2 (E.D. Tex. Dec. 8, 2009) (quoting *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co.*, 2007 WL 2461817, at *2 (E.D. Tex. Aug. 27, 2007)). Here, there is no evidence that the contract was negotiated or executed in the Southern District. Indeed, the first Named Insured on the policy is Golden Restaurants, whose mailing address is listed as Dallas, Texas. The producer of insurance is also located in Dallas, Texas. Likewise, Steadfast has not submitted evidence showing that the contract was to be performed in the Southern District. Instead, while a few restaurants were located here, it appears that the bulk of the principal places of businesses for all Named Insureds are in Dallas, Texas. The producer is located in Dallas, and Steadfast's principal place of business was in Illinois. Although some part of Steadfast's contractual obligations may have related to the Southern District, i.e., payment for claims made on restaurants here, it seems likely that the bulk of the contractual duties of Defendants were to be performed elsewhere. The Court need not

speculate on this point, however; it is enough to note that Plaintiff has not submitted evidence that Defendants' contractual duties were to be performed in the Southern District.

Finally, the alleged breach of the contract occurred in whatever district Defendants' were to send payments, or possibly where Steadfast was to receive payments. Defendants' failure to make payments gave rise to this lawsuit, and so the districts wherein payment was to be made are relevant for determining the location of the breach.[6] Again, Steadfast has submitted no evidence that the Southern District was the situs for the sending or receipt of payments.

The Court concludes that Steadfast has failed to sustain venue in the Southern District, as is required under the case law. Even taking the facts as proffered by Steadfast, this Court still may not find that a substantial part of the events or omissions giving rise to its breach of contract claim occurred in the Southern District. Though one restaurant with an outstanding claim of $13,376.45 is located in this district, the Court cannot take that single claim, which forms a small portion of the $290,632.23 sought by Steadfast, as establishing a "substantial part" of the breach of contract claim. Where Steadfast offers no evidence to show that the negotiation, performance, or alleged breach of contract occurred in the Southern District, it has not met its burden to establish that venue in the Southern District is proper.

### III.    CONCLUSION

---

[6] Some courts focus on where the relevant activities of defendants, not plaintiffs, took place. *See, e.g.*, *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (considering as the most important venue factor where contract was breached); *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995) (focusing on the location of the wrongful conduct giving rise to the claim). This Court agrees that the location of Defendants' allegedly wrongful conduct is important for determining the proper venue here, and concludes that the relevant wrongful conduct was their failure to make payments on the claim. Steadfast is silent as to whether those payments were to take place in the Southern District.

Steadfast has failed to carry its burden of showing that venue is proper in the Southern District. *Laserdynamics*, 209 F.R.D. at 390; *see also McCaskey*, 133 F. Supp. 2d at 523. The Court concludes that venue is improper under both Section 1391(a)(1) and 1391(a)(2). If venue is improper, a district court enjoys "broad discretion in determining whether to dismiss or transfer a case in the interest of justice." *W. Gulf Mar. Ass'n v. Lake Charles Stevedores, LLC*, 2010 WL 276169 (S.D. Tex. 2010) (citing *Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)). The Court finds that the interests of justice favor a transfer to the Northern District of Texas, where the parties agree suit could have been brought originally.

Accordingly, Defendant Pop Restaurants, LLC's Motion to Dismiss for Improper Venue (Doc. No. 7) is **GRANTED IN PART AND DENIED IN PART**. Additionally, the Motion to Dismiss for Improper Venue of Defendants Wok Restaurants, LLC, Four Leaf Ventures, LLC, Sarape LP, and AGP Management, LLC (Doc. No. 13) is **GRANTED IN PART AND DENIED IN PART**. The Court agrees with Defendants that the Southern District is not a proper venue for the case. Rather than dismissal, however, the Court hereby **TRANSFERS** to the Northern District of Texas.

Plaintiff's Motion for Reconsideration (Doc. No. 46) is **DENIED**. All other pending motions are **DENIED AS MOOT**.

   **IT IS SO ORDERED**.

   **SIGNED** at Houston, Texas, on this the 10th day of August, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**